IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

NEEDA PARTS MANUFACTURING, INC,
a Michigan corporation, and JAMES
KOLESZAR, an individual, and GIULIO
COGO, and individual,

        Plaintiffs,

v.

SAYGUS, INC., a Nevada corporation,
and PSNet COMMUNICATIONS,
INC., a Nevada corporation,

        Defendants.

Case No. 08
Hon.
Magistrate:

**Demand For Jury Trial**

---

Gerard V. Mantese (P34424)
David Hansma (P71056)
Mantese and Rossman, P.C.
Attorneys for Plaintiffs
1361 E. Big Beaver Road
Troy, MI  48083
(248) 457-9200

---

A related civil action between these Plaintiffs and a related entity is currently pending in this Court.  It was given docket numbers 07-cv-15410, and assigned to Judge O'Meara.

Gerard Mantese (P34424)

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by their attorneys, Mantese and Rossman, P.C., and for their Complaint against Defendants, state as follows:

1. This action arises out of the damages incurred by Plaintiffs as a result of Defendants PSNet Communications, Inc., and Saygus, Inc.'s, ("Saygus") bad faith and egregious breaches of contract and fraud.

2. As explained in more detail below, on June 25, 2007, Needa and PSNet, Inc.

entered into a Stock Purchase Agreement ("Agreement"), whereby PSNet, Inc., was to purchase 70% of Needa's issued and outstanding Common Stock for the aggregate sum of $10,000,000. Defendants are in possession of a copy of the signed contract.

3. PSNet, Inc., is the alter ego of, and agent of, Defendants, and PSNet's frauds and breaches of contract are attributable to it. Further, Defendants are liable for their own frauds as set forth in this Complaint.

4. Defendants, both individually and through their agents, employees and subsidiaries, have made numerous fraudulent misrepresentations and omissions to Plaintiffs. Plaintiffs relied on these misrepresentations in entering into the stock purchase agreement with PSNet Inc., and continuing to deal with PSNet Inc., despite its failure to pay Needa.

## JURISDICTIONAL ALLEGATIONS

5. Needa Parts Manufacturing, Inc, is a Michigan corporation, with its registered address at 3040 Dye Road, Flint, Michigan 48507.

6. Plaintiff Jim Koleszar is a Michigan resident.

7. Plaintiff Giulio Cogo is a Michigan resident.

8. Defendant PSNet Communications, Inc., is a Nevada corporation with its principal place of business in Sandy, Utah.

9. Defendant Saygus, Inc., is a Nevada corporation with its principal place of business in Sandy, Utah.

10. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and the case is between citizens of

different states.

12. Venue is properly laid in this Court, pursuant to 28 USC § 1391(b)(2), because the events giving rise to this claim occurred in the Eastern District of Michigan.

## **GENERAL ALLEGATIONS**

**A.     Background of the Deal Between Needa Parts And Defendants**

13. This action arises out of Defendants' fraudulent statements and omissions made to induce Plaintiffs to enter into, and continue in, a contract to purchase a majority share of Needa Parts.

14. Needa Parts is in the business of manufacturing and selling aftermarket automotive parts to retailers and wholesalers.

15. In approximately October of 2006, Needa Parts began searching for investors who would provide it with additional capital.

16. Thereafter, Plaintiffs were put in touch with Defendants and an entity they thought was PSNet, Inc. PSNet, Inc., was and is the alter ego of Defendants and was at all times controlled and dominated by Defendants. Defendants used PSNet, Inc. to defraud Plaintiffs.

17. Defendants represented that PSNet was interested in investing in Needa, and sent to Needa a "term sheet for potential investment" proposing to pay $10,000,000 for 70% of Needa's stock. Defendants initially proposed a closing date of December 16, 2006.

18. In December, 2006, Defendants performed a due diligence review of Needa. This review was satisfactory.

19. In or around December, 2006, Needa and PSNet agreed that PSNet's would acquire 70% of the Needa's stock.

20. Defendants and PSNet, Inc., however, did not tender any of the $10 million purchase price for the stock.

21. Thereafter, various communications ensued between representatives of Needa and representatives of Defendants and PSNet, Inc. Needa continuously expressed its need to receive the capital as soon as possible and Defendants continuously represented that they would be providing the capital soon.

22. In June of 2007 it appeared that the deal between Plaintiffs and PSNet, Inc., would finally be consummated. Needa's attorneys drafted stock certificates, the Stock Purchase Agreement, and other documents related to the transaction.

23. On June 25, 2007, the Plaintiffs and PSNet, Inc., executed a detailed, 28-page Stock Purchase Agreement.

24. Needa has performed all of its obligations under the Agreement.

25. Despite Needa's full and timely compliance with the terms of the Agreement, Defendants and PSNet, Inc. have failed to pay any of the $10,000,000 promised as consideration for the shares of Needa.

26. From late 2006 to September of 2007, Needa continuously contacted Defendants and Defendants' agents regarding the failure to pay the agreed sum. Defendants would continuously tell Needa that the funds would be forthcoming soon.

27. As a result of the failure to pay Needa the agreed consideration, Needa has suffered significant damages.

28. Needa has already lost business, and is at risk of losing substantially more business.

29. In September 2007, Defendants stopped returning phone calls from

representatives of Needa.

30. As a result of Plaintiffs' reliance on Defendants' promises and false representations, Plaintiffs will lose millions in revenues, profits and other damages.

**B.     Defendants' Fraudulent Statements**

31. On several occasions since December of 2007, Defendants have misrepresented to Plaintiffs material facts, including, but not limited to, facts regarding the intention to pay Plaintiffs the agreed sum, and the time, place and amounts of those payments.

32. On January 30, 2007, in a letter to Needa's two shareholders, Plaintiffs Koleszar and Cogo, Defendants' CEO, Chad Sayers, stated that the Department of Homeland security had frozen several of PSNet's accounts in amounts in excess of $38 million.  Sayers further stated that this had caused severe case flow timing problems.

33. Sayers then affirmatively stated that the funds would be released no later than February 28, 2007 and that he planned "to move ahead with our purchase commitment to you no later than ten days from the date that our funds are released."

34. Sayers also stated that, in the meantime, Defendants would wire funds to Needa to the extent it was able to do so.

35. Defendants did not provide any funds to Needa within ten days of February 28, 2007, or any other date.  Further, Defendants did not wire any funds to Needa "in the meantime."

36. On information and belief, the Department of Homeland Security did not freeze any of PSNet's funds.

37. In February of 2007, based on requests from Plaintiff Jim Koleszar,

Defendants falsely promised to tender the agreed purchase price "no later than April" of 2007.

38. Defendants did not tender the purchase price by April of 2007. Defendants only provided one payment of $22,000 on March 16, 2007.

39. On or about March 5, 2007, Sayers spoke by phone with Koleszar and Needa Part's banker. During this conversation, Sayers promised to provide Needa Parts with $50,000 in operating capital by March 12, 2007.

40. Defendants did not provide the $50,000 by March 12, 2007.

41. On April 12, 2007, Sayers told Plaintiffs that Defendants would not be able to pay Needa the promised money "anytime soon." Sayers falsely stated that the failure to pay was because Defendants' property sales revenues were a few weeks late, that one of Defendants' partners was two weeks late in wiring funds, and that $10 million was not released by the Department of Homeland Security.

42. On July 10, 2007, after the closing documents had been signed, Jim Koleszar traveled to Defendants' headquarters in Utah to meet with Sayers.

43. At this July 10, 2007, meeting, when asked about payment, Sayers falsely stated that Defendants had $3 million tied up in a bond securing a development project. Sayers further falsely stated that as soon as they were given permission to move ahead with the development project, the bond would be pulled and the $3 million would be paid to Needa.

44. Sayers further falsely stated at this July 10, 2007 meeting that Defendants would provide payment to Needa within ten days.

45. Defendants did not tender payment within ten days of the meeting.

46. On July 12, 2007, Sayers sent an email to Jim Koleszar.

47. In this email, Sayers falsely stated, "We will send out another $100,000 by Friday of this week or early next week[.]"  Defendants did not send this $100,000.

48. Finally, in this July 12, 2007, letter, Sayers falsely stated, "we expect to send Needa Parts between $500,000 and $1,000,000 depending on what your requirements may be to sustain operations until we can accomplish the final closing."  Sayers and PSNet did not send this $500,000, much less $1,000,000.

49. On July 23, 2007, Defendants provided Needa with $20,000.

50. On or about July 21, 2007, Jim Koleszar had a meeting with the president and vice president of Needa's bank, State Bank.  During this meeting, the three men spoke on the phone with Sayers.

51. Sayers falsely stated to Koleszar and the bank officials that the money was ready to go and that PSNet would pay $1,500,000 by the end of July, 2007, and the balance shortly thereafter and no later than within 30 days.

52. Defendants did not provide these funds.

53. After July, 2007, Koleszar could not get in touch with Defendants. Defendants stopped returning Koleszar's phone calls or responding to his emails.

54. All of Defendants' misrepresentations were false.

## COUNT I – BREACH OF CONTRACT

55. Plaintiffs reallege all preceding paragraphs.

56. As stated, on or about June 25, 2007, Needa and PSNet, Inc. executed a written Stock Purchase Agreement providing, inter alia, that PSNet, Inc. would purchase 70% of Needa's stock for a sum of $10,000,000.

57. This agreement was the culmination of discussions and negotiations between the parties, and was based on assurances by PSNet, Inc., that it would perform under the contract.

58. Needa has fully performed all of its duties and obligations under the contract, and all of its promises and warranties were true and have been fulfilled. PSNet, Inc., however, has failed to pay the agreed upon consideration.

59. Plaintiffs Koleszar and Cogo also signed the contract individually.

60. PSNet, Inc., has breached the parties' contract.

61. PSNet's breach has caused significant damages to Plaintiffs, including, but not limited to, lost capital investment, diminished value of Needa Parts, lost profits, and lost dividends. Further, plaintiff seeks specific performance.

62. PSNet, Inc.'s obligations under the contract and its breach of contract are attributable to and imputed to Defendants. PSNet, Inc., is the alter ego of Defendants, and at all times was and is an instrumentality Defendants, and has been used to commit frauds and various wrongful acts which have caused unjust loss to Plaintiffs. Therefore, PSNet's corporate veil should be pierced, and Defendants should be bound by the contract.

## **COUNT II – FRAUD AND MISREPRESENTATION**

63. Plaintiffs reallege all preceding allegations.

64. Defendants, by their agent Chad Sayers, made various false and misleading representations to Plaintiffs. Sayers made these misrepresentations in the course and scope of his relationship with Defendants, and his statements are attributable to Defendants.

65  Defendants had no present intention to perform the promises set forth herein. These promises and representations included, inter alia:

    a.    That the Department of Homeland Security had frozen PSNet's assets;

    b.    That PSNet would pay Needa as soon as the Department of Homeland Security released the funds;

    c.    That PSNet would wire funds to Needa to the extent that it was able;

    d.    That PSNet would pay Needa within ten days of February 28, 2007;

    e.    That PSNet would pay Needa the purchase price no later than April, 2007;

    f.    That PSNet would provide Needa with $50,000 no later than March 12, 2007;

    g.    That PSNet had not provided the purchase money because one of PSNet's partners was late in paying PSNet, because PSNet's property sales revenues were late, and because $10 million dollars still had not been released by Homeland Security;

    h.    That the $3 million dollar initial payment due on closing was tied up in a bond;

    i.    That PSNet would pay Needa as soon as the bond was released;

    j.    That PSNet would pay Needa within ten days of July 10, 2007;

    k.    That PSNet would pay Needa $100,000 by the week of July 15, 2007;

    l.    That PSNet would provide Needa $500,000 to $1,000,000 to sustain Needa;

    m.    That PSNet would pay Needa $1.5 million by the end of July, 2007, and the balance shortly thereafter.

66.  When these representations were made, Defendants knew the representations were false, or made them recklessly, without knowledge of their truth and as positive assertions.

9

67. The representations were made with no present intention to perform as he promised.

68. Defendants made these false statements and promises as part of a fraudulent scheme to string Plaintiffs along, to cause Plaintiffs to enter into the stock purchase agreement, to continue in the agreement, and to not pursue remedies against Defendants.

69. Defendants made the promises and false statements with the intention that Plaintiffs would rely upon them.

70. Plaintiffs did rely on the false statements and promises by continuing to go forward with the deal with PSNet, by entering into the stock purchase agreement, by expending funds in expectation of being paid by PSNet, and by failing to pursue other investment opportunities, by failing to pursue other loan opportunities, and by failing to pursue remedies against PSNet.

71. Plaintiffs were injured by Defendants' fraud. Specifically, Plaintiffs expended valuable time and money in reliance on Defendants' promises and have been damaged in many ways, including in their relationship with customers and suppliers.

72. These injuries caused Plaintiffs financial damages in an amount in excess of $10 million.

73. Defendant are liable for their own fraudulent statements and those fraudulent statements made by its agents and employees. Further Defendants are liable for all fraudulent statements attributable to PSNet, Inc. PSNet, Inc., is the alter ego of Defendants, and at all times was and is an instrumentality of Defendants, and has been used to commit frauds and other wrongful acts which have caused unjust loss to Plaintiffs.

74. Defendants' conduct was willful, wanton and malicious, and Plaintiffs are

entitled to exemplary damages.

## COUNT III – INNOCENT MISREPRESENTATION

75. Plaintiffs reallege all preceding paragraphs.

76. Defendants made several fraudulent misrepresentations to Plaintiffs, as set forth above.

77. These fraudulent misrepresentations were made by Defendants' agents, acting in the course and scope of their agency relationship.

78. These fraudulent misrepresentations were made during the transaction between Plaintiffs and Defendants, and even if made innocently, they benefitted Defendants.

79. These fraudulent misrepresentations actually deceived Plaintiffs and they relied on them by continuing to go forward with the deal with PSNet, by entering into the stock purchase agreement, by expending funds in expectation of being paid by PSNet, by failing to pursue other investment opportunities, by failing to pursue other lending, and by failing to pursue remedies against PSNet.

80. Plaintiffs suffered loss which inured to the benefit of Defendants by allowing Defendants and PSNet to continue failing to perform their contractual obligations, and by allowing Defendants and PSNet to avoid liability to Plaintiffs.

81. Defendants are liable for their own misrepresentations and those misrepresentations made by their agents and employees.  Further Defendants are liable for all misrepresentations attributable to PSNet, Inc.  PSNet, Inc., is the alter ego of Defendants, and at all times was and is an instrumentality of Defendants, and has been used to commit frauds and other wrongful acts which caused unjust loss to Plaintiffs

82. Defendants' actions were wilful, wanton and malicious, and Plaintiffs are entitled to exemplary damages.

## COUNT IIV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP/EXPECTANCY

83. Plaintiffs reallege all preceding paragraphs.

84. Plaintiffs have a valid business relationship and expectancy with its suppliers and customers.

85. Defendants had knowledge of these business relationships and expectancies.

86. Defendants committed intentional acts which caused the breach of, and interfered with, these relationships and expectancies.

87. Defendants committed these acts maliciously and without justification, including by making fraudulent misrepresentations to Plaintiffs to deceive Plaintiffs to continue dealing with Defendants, to continue in the stock purchase agreement, and to not pursue other funding opportunities.

88. Further, Defendants' actions were *per se* wrongful because they were fraudulent and amounted to a tort against Plaintiffs.

89. Plaintiffs were damaged by Defendants' conduct, including sustaining a loss of profits and valuable business.

90. Defendants are liable for their own tortious interference and the tortious interference committed by its agents and employees. Further Defendants are liable for all acts of tortious interference attributable to PSNet, Inc. PSNet, Inc., is the alter ego of Defendants, and at all times was and is dominated and controlled by Defendants, and has

been used to commit frauds and other wrongful acts which have caused unjust loss to Plaintiffs.

91. Defendants' conduct was willful, wanton and malicious, and Plaintiffs are entitled to exemplary damages.

WHEREFORE, Plaintiffs request a Judgment against Defendants in an amount in excess of $10,000,000, plus all compensatory, consequential, exemplary, punitive, and other damages, lost profits, pre-filing interest, post-filing interest, attorney fees, costs and whatever other relief this Court finds appropriate, including specific performance.

        Respectfully submitted,
        **MANTESE AND ROSSMAN, P.C.**
        Attorneys for Plaintiffs

        s/ Gerard V. Mantese
        Gerard Mantese (P34424)
        gmantese@manteselaw.com
        David Hansma (P71056)
        dhansma@manteselaw.com
        1361 E. Big Beaver Rd.
        Troy, Michigan 48098
        (248) 457-9200

Dated: July 17, 2008

## **JURY DEMAND**

Plaintiffs hereby requests a trial by jury.

>Respectfully submitted,
>
>**MANTESE AND ROSSMAN, P.C.**
>Attorneys for Plaintiffs
>
>
>s/ Gerard V. Mantese
>Gerard Mantese (P34424)
>gmantese@manteselaw.com
>David Hansma (P71056)
>Dhansma@manteselaw.com
>1361 E.  Big Beaver Rd.
>Troy, Michigan 48098
>(248) 457-9200
>gmantese@manteselaw.com

Dated: July 17, 2008